IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| BAIN, et al., | ) | |
| Plaintiffs, | ) ) | **CIVIL ACTION** |
| v. | ) ) | No. 03-1354-MLB |
| IMC GLOBAL, INC., et al., | ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM AND ORDER

Before the court is plaintiffs' motion for judgment after trial, motion for new trial, or in the alternative, to alter or amend judgment. The motion is fully briefed and ripe for decision. For the reasons herein, plaintiffs' motion is denied.

I.  **FACTS AND PROCEDURAL HISTORY**

The court, sitting by designation, conducted a jury trial that began on July 12, 2005, in Las Cruces, New Mexico. On July 19, 2005, the jury returned a verdict in favor of defendant. The jury concluded, after answering only one question on the questionnaire, that James Frintz was the special employee of IMC at the time of the accident. Thus, Philco could not be responsible for Frintz's acts under the doctrine of respondeat superior. After the jury's finding, the court entered judgment for defendant Philco.

II. **ANALYSIS**

The parties are familiar with the standards pertaining to motions pursuant to Fed. R. Civ. P. 59(a). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial

court. <u>Meyerhoff v. Michelin Tire Corp.</u>, 852 F. Supp. 933 (D. Kan. 1994), <u>aff'd</u>, 70 F.3d 1175 (10th Cir. 1995). Motions for new trial based on some infirmity in instructions are not viewed with favor. <u>Id.</u> A motion for new trial based on the ground that the jury's verdict is contrary to the weight of the evidence is addressed to the trial court's discretion. <u>Blanke v. Alexander</u>, 152 F.3d 1224 (10th Cir. 1998). The movant must demonstrate that the jury's verdict was clearly, decidedly or overwhelmingly against the weight of the evidence. <u>Gower v. IKON Office Solutions, Inc.</u>, 177 F. Supp. 2d 1224 (D. Kan. 2001).

### A. Frintz' Status as a Special Employee

#### 1. Authority

Plaintiffs assert that Amos Urquidez, an IMC employee, did not have the authority to create an employer-employee relationship with Frintz and therefore, as a matter of law, Frintz could not be the special employee of IMC. Plaintiffs propose that the following is the appropriate test to determine the issue of special employee:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
> (a) the employee has made a contract of hire, express or implied, with the special employer;
> (b) the work being done is essentially that of the special employer; and
> (c) the special employer has the right to control the details of the work.
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

<u>Johnson v. Aztec Well Servicing Co.</u>, 117 N.M. 697, 699, 875 P.2d 1128, 1130 (N.M. App. 1994); <u>see also</u> <u>Rivera v. Sagebrush Sales, Inc.</u>, 118 N.M. 676, 678-679, 884 P.2d 832, 834-35 (N.M. App. 1994). This test

-2-

is referred to as the Larsen test. Id. As counsel makes clear, this test has been applied only in a worker's compensation context and not in a case where the issue of special employee is dispositive of the employer's liability based on a theory of respondeat superior. The court is not inclined to extend this test to cases outside of the context of workers' compensation without some indication that such an extension has been impliedly approved by the New Mexico Supreme Court. The New Mexico Supreme Court cases, albeit dating into the 1960's, are clearly instructive on the test pertaining to special employees.

> In these cases we have consistently adhered to the rule announced in Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, and followed in McLamb v. E. I. DuPont de Nemours & Co., 4th Cir., 79 F.2d 966. In Jones v. George F. Getty Oil Company, 10 Cir., 92 F.2d 255, we find the problem stated in the following language: "The ultimate test is: Whose is the work being done?" Standard Oil Company v. Anderson, supra. In determining whose work is being done, the question of the power to control the work is of great importance (Standard Oil Company v. Anderson, supra), but is not conclusive (Linstead v. C. & O. R. Co. [276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453]; Hull v. Philadelphia & R. R. Co. [252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670], supra). The identity of the person who, in fact, directs the details of the work and gives the immediate instructions to the workmen is of comparatively small importance, the power of control referred to being the power to control the undertaking as a whole. McLamb v. DuPont Company, supra; Singer Mfg. Co. v. Rahn [132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440], supra.

Shipman v. Macco Corp., 74 N.M. 174, 177-78, 392 P.2d 9, 11 (N.M. 1964); see also Wuertz v. Howard, 77 N.M. 228, 230-32, 421 P.2d 441, 442-43 (N.M. 1966).

In the cases addressed by the New Mexico Supreme Court, it is important to note that the court did not address whether a contract to hire the special employee existed. While the court in Wuertz noted that the authority of the individual seeking assistance was not in

question, it did not give any direction as to the importance of this factor. Plaintiffs cite <u>Bogart v. Hester</u>, 66 N.M. 311, 347 P.2d 327 (1959), in support of their position that a person of authority must contract with or hire an individual in order to make him a special employee. <u>Bogart</u>, however, is clearly distinguishable. The court was considering the question of the status of the plaintiff, i.e. volunteer, trespasser or invitee. The plaintiff in Bogart was merely a bystander and not on the premises for his employer, general or special.

The courts have frequently stated that the test is "whose work was being done at the time of the accident?" <u>Wuertz</u>, 77 N.M. at 230, 421 P.2d at 442. The facts clearly showed that the work being done was that of IMC. Moreover, there was testimony that Urquidez, IMC's employee, had control of the unloading. While Urquidez was not a supervisor, the New Mexico Supreme Court has held that the identity of the person controlling the work is of no importance. <u>Shipman</u>, 74 N.M. at 177-78, 392 P.2d at 11. The important factors are whose work was performed and who had the ability to control the employee.

The New Mexico Supreme Court, without addressing the issue of an employment contract between the special employee and special employer, has determined that the consent of the special employee is relevant, but not dispositive:

> Assuming, however, that there was consent, such consent does not bar the employee from becoming the special employee of another. In <u>Jones v. George F. Getty Oil Co.</u>, 92 F.2d 255 (10th Cir. 1937) and <u>Weese v. Stoddard</u>, 63 N.M. 20, 312 P.2d 545, the general employer had directed the employee to do the work he was doing; in both cases the worker was held to be a special employee.
> The fact that the accident occurred on a drilling location where both Sharp and Halliburton had a right to be

-4-

is of no benefit to plaintiff. The status of special employment is not dependent on the accident happening on the premises of the special employer. See Brown v. Pot Creek Logging & Lumber Co., 73 N.M. 178, 386 P.2d 602. Plaintiff entered the service of Halliburton in the same manner that the truck driver of Billy Walker entered the service of Howard P. Holmes Drilling Company in Dunham v. Walker, 60 N.M. 143, 288 P.2d 684. Being asked, he helped out. Thus, if required, there is a 'consensual relationship' between employee and special employer. In discussing the Dunham case, Huff v. Dunaway, 63 N.M. 121, 314 P.2d 722, states:

> The employment in Dunham v. Billy Walker takes on the character of a 'borrowing' by the Holmes Drilling Company of an employee of Walker to assist in a work foreign to the engagement that had brought him there. This factor injects an element of choice, or voluntariness, on the part of the 'borrowed' employee, so desirable in a transaction of this kind.

Wuertz, 77 N.M. at 231-32, 421 P.2d at 442-43.

The undisputed evidence in this case shows that Frintz voluntarily consented to performing the work for IMC. In Wuertz, however, the court did not address whether the person seeking assistance needed the requisite authority to create an employment contract. In Dunham, the court noted:

> Every person present, except the driver of the Billy Walker winch truck, was an employee of Howard P. Holmes Drilling Company, for which company the sills were being delivered. These employees were Ross Solomon and Buster Florence, drilling superintendents for Holmes, as well as the plaintiff himself, a tool pusher. Asked if there was a Billy Walker pusher there, plaintiff replied, 'Not that I know of.'
> At the time of plaintiff's injury the Billy Walker truck had already unloaded and having done so was ready to leave the Howard Holmes yard when <u>the aid of its driver apparently was invoked</u> to assist in unloading the float in question by the Howard Holmes employees, including its drilling superintendent. This fact appears by testimony so compelling as to be unanswerable. No tool pusher or person in supervisory capacity working for Billy Walker other than the driver of the winch truck involved, was then or at any other time identified as being present, or thereabouts. The only supervisors on the job were the three supervisors for

>  Howard Holmes, Ross Solomon, Buster Florence and the plaintiff himself. They and they alone had any direction of the work in hand.

Dunham, 60 N.M. at 148, 288 P.2d at 687(emphasis supplied). The identity of the person who sought the aid of the driver is unknown. While there were supervisors on site, there is no indication that these individuals have the ability to enter into employment contracts. Rather, the court focused on the fact that these individuals were directing the activities, i.e. the question of control.

The court is not persuaded that the New Mexico Supreme Court would adopt a rule that the person seeking assistance have the requisite authority to enter into a contract with the special employee. The Supreme Court had numerous opportunities to address this question, but did not do so. Rather, the Supreme Court stated that all that _may_ be required is a consensual relationship, not a contractual relationship as set out in the Larsen test. Wuertz, 77 N.M. at 231-32, 421 P.2d at 442-43. Again, the evidence clearly supported a conclusion that Frintz consented to perform the work. Plaintiffs' motion is denied.

### 2. Control

Plaintiffs contend that the court erred in not granting their Rule 50(b) motion on the issue of special employee since the uncontested facts establish that Urquidez did not have the right to control the manner and details of Frintz' forklift operations. Plaintiffs interpret New Mexico law to require the special employer to have control over the specific means and methods of performing the work, not just the general objective of unloading the rolls.

In Moulder v. Brown, 98 N.M. 71, 76, 644 P.2d 1060, 1065 (N.M.

-6-

App. 1982), the court held "[a]bsent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed." The facts in this case would support a finding that IMC had control over the job location. Moreover, it is unnecessary to find that Urquidez exercised any control by giving directions to conclude that Urquidez had control over the manner in which Frintz operated the forklift. The test is whether the employer has the <u>right</u> to control the manner of the work. Scott v. Murphy Corp., 79 N.M. 697, 448 P.2d 803 (1968). The fact that Urquidez did not attempt to control the manner in which Frintz unloaded the rolls does not mean that he did not control the job. The jury could have reasonably concluded that Urquidez had the right to control the job since the rolls of belting were to be used by IMC alone.

Plaintiffs further assert that Urquidez testified that he did not have the right to tell Frintz what to do. Without the benefit of a transcript, the court cannot confirm the context of this answer. The court recalls that Urquidez testified that Frintz volunteered his assistance and that Urquidez could have told Frintz when and how to unload the rolls. What Urquidez could or could not do was a question for the jury.

The court finds that the question of special employee was proper for the jury's consideration since there were disputed issues of material facts. Plaintiffs' Rule 50(b) Motion for Judgment on the issue of special employee is accordingly denied.

**B.  Jury Instructions**

Plaintiffs' second objection is that the court erred in not instructing the jury that Frintz could also be found to be an employee of both Philco and IMC at the time of the accident. Plaintiffs have asserted that this third employment status option is required in a third party tort action and cites to cases which discuss the possibility of a scenario in which both employers would be liable. The Tenth Circuit stated that "in cases where a third person having sued the general employer for injuries arising from the negligence of his employee, such general employer defending on the ground that such negligent employee was, at the time, in the special employ of another person, in order for the defense to prevail, the general employer must not only show that the workman was in the special employ of another, but also that such workman's status as a general employee of the defendant had temporarily ceased and negative the fact that the employee was the servant of both employers at the time of the accident." Jones v. George F Getty Oil Co., 92 F.2d 255, 259 (10th Cir. 1937). This rule, however, has not been applied nor recognized by the New Mexico courts. In the Dunham case, the New Mexico Supreme Court was faced with a third party negligence action and specifically held "that for purposes of the work underway, the driver of the Billy Walker truck became a special employee of Howard Holmes Drilling Company. If he was, then his acts became those of his special employer by reason whereof no liability in the premises can attach to Billy Walker for the negligence, if any, of the driver of the Billy Walker winch truck so engaged." 60 N.M. at 149, 288 P.2d at 688. The court did not apply the rule stated almost thirty years earlier in the Getty

-8-

Oil case.

The court finds that the language set out in <u>Durham</u> accurately states the law of New Mexico and is in accordance with the general rule that "an employer is not liable under respondeat superior for an injury negligently caused by a servant if the servant is not acting at the time as the servant of that employer, and the evidence shows that the employee has been loaned to the service of another who controls the manner and details of the employee's work." <u>Los Ranchitos v. Tierra Grande, Inc.</u>, 116 N.M. 222, 226, 861 P.2d 263, 266 (N.M. App. 1993). In this case, the evidence supported a conclusion that Frintz was working for the sole benefit of TMC and that an IMC employee was in control of the work. Certainly, there was no evidence that Philco was controlling Frintz's work at the time of the accident or that Phico benefitted in any manner from Frintz's actions in unloading the truck. Accordingly, neither the case law nor the evidence supported an instruction that allowed the jury to find that Frintz was the employee of both IMC and Philco.

Plaintiffs also assert that the court's instruction on special employee inaccurately stated the law. The court instructed the jury as follows:

> A "special employer" is one which borrows the employee of another to perform work for its benefit, even if the employee is borrowed for a limited period of time, and the "special employer" has the right to control the manner in which the details of the work are to be done, even though the right of control may not be exercised. An employee borrowed under these circumstances is called a "special employee."
> The test fo determining whether an employee qualifies as a "special employee" depends on whose work is being done at the time of the accident, and who had the power to control the details and manner of the work to be performed.
> In determining the question of "control," you may

-9-

consider any or all of the following factors:
1. The type of occupation and whether it is usually performed without supervision.
2. The skill required for the occupation.
3. Whether the employer supplied the forklift for the person doing the work.
4. Whether the work is part of the regular business of the employer.
5. The circumstances of the particular case.

(Jury Instruction No. 13.)

The court finds that this instruction is in accordance with New Mexico law, supra at 3-8. Plaintiffs' motion is denied.

### C. Jury's Findings

Finally, plaintiffs contend that the jury committed plain error in finding Frintz was a special employee of IMC. The court disagrees. As previously discussed, supra, the jury was properly instructed on the law. The case was tried by highly competent counsel. The jury was attentive during the trial. The jurors deliberated for a reasonable period of time. The jury's verdict could have gone either way depending upon the juror's assessment of the weight and credibility of the witnesses' testimony. The jury chose to find for defendant.

### III. CONCLUSION

Plaintiffs' motion is denied.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider

-10-

and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this  18th   day of October 2005, at Wichita, Kansas.

> s/ Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE